MICHAEL J. HEYMAN
United States Attorney

JENNIFER IVERS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: jennifer.ivers@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>JEFFREY LYNN SPONSLER,<br><br>  Defendant. | No. 3:25-cr-00035-SLG-KFR |

**GOVERNMENT RESPONSE IN OPPOSITION TO MOTION TO REOPEN DETENTION HEARING**

The United States respectfully opposes defendant Jeffrey Sponsler's Motion to Reopen Detention Hearing filed at Docket 14. This Court, after a contested detention hearing on June 9, 2025, found that Sponsler posed a danger to the community and that the proposed conditions, including a "general prohibition on internet access," would not adequately mitigate that danger. Doc. 14-3 at 6:19. Sponsler now proposes that installation of monitoring software on a computer would address the Court's concerns about Sponsler's dangerousness.

Information about computer monitoring was available to Sponsler before the detention hearing. And even if it were previously unavailable, it would not address this Court's concerns about Sponsler's dangerousness. Accordingly, this Court should deny Sponsler's motion.

## 1. Procedural Background

On May 20, 2025, Sponsler was indicted by the Grand Jury for one count of Possession of Child Pornography. Doc. 2. He was arrested on June 5, and an arraignment was scheduled for June 9, 2025. Doc. 3. The United States and Sponsler filed memoranda in support of detention and pretrial release, respectively. Docs. 5, 6. Pretrial Services prepared a report recommending pretrial release, with conditions prohibiting access to Internet-capable devices. Doc. 7. Due to time constraints, Pretrial Services was not able to interview Sponsler before preparing that report. *Id.*

Sponsler in his memorandum opposed any limitations on computer access. Doc. 6. He included several quotes from a "federally qualified forensic computer expert" who had apparently reviewed the government's detention memo and concluded that the case was not a "slam-dunk." *Id.* at 11.[1]

This Court held a contested detention hearing concurrently with the June 9 arraignment. Sponsler elected not to exercise his statutory right to a five-day continuance and proceeded that day. *See* 18 U.S.C. § 3142(f) ("The hearing shall be held immediately upon the person's first appearance . . . unless that person . . . seeks a continuance . . . not

---

[1] Unless Sponsler has hired two forensic investigators, this "expert" was Mr. Fishbach, who provided the declaration at Docket 14-2.

U.S. v. Sponsler
3:25-cr-00035-SLG-KFR

Page 2 of 13
Case 3:25-cr-00035-SLG-KFR    Document 19    Filed 06/18/25    Page 2 of 13

to exceed five days."). The United States, through its memorandum and oral argument, presented evidence of the significant time and effort Sponsler expended to obtain nude, non-pornographic images and videos of children, edit those to create child pornography, and organize and store his child pornography collection.

Sponsler, as in his memorandum, proposed a cash bond and home confinement. He further proposed that Pretrial Services could monitor his Internet use while allowing him to work from home. He argued that he was allegedly "simply consuming" child pornography and therefore posed minimal danger to children.

This Court addressed each of the relevant 3142(g) factors in concluding that the government presented sufficient evidence of Sponsler's dangerousness, specifically to the children depicted in his child pornography images. Doc. 14-3 at 3-7. The Court noted that Sponsler was "willing to spend a significant amount of time . . . acquiring, editing, manipulating, and creating his own preferred types of alleged child pornography material." *Id.* at 4:21-23. The Court found that the proposed conditions of release could mitigate Sponsler's risk of flight and danger to minors in the community. *Id.* at 5. But as to the minors depicted in the images, the Court did not "believe that there are any conditions that can effectively deter defendant's online access to images or child pornography or effectively deter his analog access to child pornography . . . ." *Id.* at 6:1-5.

The Court pointed out that it would be easy for Sponsler to evade limitations on computer or Internet use because "[d]igital devices and hard copies of child pornography are simple to obtain and easy to hide." *Id.* at 6:6-7. That danger was amplified by Sponsler's

computer science background, extensive manipulation and storage of images, use of a video of child pornography in a sexual encounter, and use of encryption. *Id.* at 6:9-12. The proposed conditions would "require defendant's compliance" to be effective, and the Court could not be "confident" that they would adequately protect the community. *Id.* at 6:19-20, 7:2.

Sponsler now seeks to reopen the detention hearing. Doc. 14. To meet his burden under 18 U.S.C. § 3142(f), he says that he learned on June 12 that Pretrial Services had access to a computer monitoring program called Internet Probation and Parole Control (IPPC), of which he was not aware at the time of the detention hearing. *Id.* at 2. He provides a declaration by Jeffrey Fishbach purporting to explain how IPPC works. Doc. 14-2. Apart from IPPC, Sponsler further argues that that he is receiving inadequate medical care while in custody and should be released. Doc. 14 at 3-4.

## 2. Legal Background

The Bail Reform Act of 1984 grants the government the right to seek a defendant's detention in certain cases. 18 U.S.C. § 3142(f). In cases where the government seeks detention, the hearing must be held at the "first appearance before the judicial officer[.]" The Bail Reform Act favors release. *Id.* Only when a magistrate court finds that there are no condition[s] or combination of conditions . . . [that will] reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community" is pretrial detention permitted. 18 U.S.C. § 3142(e)(1).

Following the entry of a pretrial detention order pursuant to 18 U.S.C. § 3142(i), a

defendant has two avenues for reconsideration of that order. First, the defendant may appeal the detention order to the "court having original jurisdiction over the offense." 18 U.S.C. § 3415(b); *see also United States v. Evans*, 62 F.3d 1233, 1235 (9th Cir. 1995). Second, 18 U.S.C. § 3142(f) provides:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Courts interpret this provision strictly. *United States v. Knight*, 452 F. Supp. 3d 938, 945 (D. Nev. 2020). They require movants to establish that the information was (1) new and (2) material to release conditions regarding flight or dangerousness. *United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020).

The Court should not reopen a detention hearing to consider information that was available at the time of the hearing. *United States v. Turino*, 2014 WL 5261292, at *1 (D. Nev. Oct. 15, 2014) (citing *United States v. Ward*, 63 F.Supp. 2d 1203, 1206 (C.D. Cal. 1999)). Instead, this first prong requires new information. *See id.* New information is information unavailable to the movant at the time of the hearing, not information the movant could have discovered but chose not to. *United States v. Flores*, 856 F. Supp. 1400, 1406 (E.D. Cal. 1994). To hold otherwise would encourage "piecemeal presentations" and "seriatim hearings," contrary to the principles of finality and judicial efficiency. *Id.*

Information having a "material bearing" "refer[s] to information that actually affects the Court's decision whether to detain the defendant pending trial." *United States v.*

U.S. v. Sponsler
3:25-cr-00035-SLG-KFR
Page 5 of 13
Case 3:25-cr-00035-SLG-KFR    Document 19    Filed 06/18/25    Page 5 of 13

*Chansley*, No. 21-cr-3, 2021 WL 2809436, at *3 (D.D.C. July 6, 2021). "Thus, in addition to 'bearing' on—having a logical relation to—detention, the sort of new information capable of reopening a detention hearing must also 'bear' materially—it must relate in some significant or essential way to the decision whether to detain." *Id.*

In *Flores*, for example, the court declined to consider information "readily available" to the government at the initial detention hearing. *Id.* That information related to witness testimony about the defendant's past acts of violence. *Id.* at 1407. The court noted that the government had requested a continuance of the detention hearing to "gather more evidence pertinent to its detention request." *Id.* Yet it failed to present the bad acts evidence at the continued hearing, instead seeking to reopen the hearing at a later date. *See id.* By contrast, the court was willing to consider evidence that was actually new, such as the defendant's contact with witnesses in violation of his court-ordered conditions of release. *Id.* at 1408.

A defendant's decision not to seek a continuance of a detention hearing can be a factor in whether information is "properly described as new." *United States v. Qiu*, No. 1:22-CR-00001, 2022 WL 1082023, at *3 (D. N. Mar. I. Apr. 12, 2022). In *Qiu*, the court had repeatedly continued the defendant's detention hearing based on unopposed requests. *Id.* at *1. Yet at the continued hearing, the defendant chose not to propose his "close friend" as a third-party custodian. *Id.* at *2. Instead, the defendant sought to reopen the hearing two months later, this time with the third-party custodian proposal. *Id.* The court, in assessing whether this was new information, pointed out that the defendant "could have

sought another continuance of the detention hearing to find a third-party custodian but chose not to." *Id.* at *3. Under those circumstances, the court declined to reopen in the issue of detention. *Id.*

A recent District of Nevada case, *United States v. Spurlock*, addresses the materiality prong. *United States v. Spurlock*, No. 3:23-CR-00022-MMD-CLB, 2024 WL 3850395, at *1 (D. Nev. Aug. 16, 2024), *aff'd*, No. 3:23-CR-00022-MMD-CLB-1, 2024 WL 4442884 (D. Nev. Oct. 8, 2024). There, the magistrate court – affirmed by the district court – found that the defendant had failed to present information that was both new and material to detention. *Id.* The defendant argued that because he had not been interviewed by Pretrial Services prior to his detention hearing, the additional background included in his subsequent interview was new and material. *Id.* at *3-4. But Spurlock was aware of his own background and could have presented that information at his detention hearing, "despite it being potentially unknown to the Government or the Court." *Id.* at *4. He further claimed that his conditions of confinement, namely that the detention center "failed to keep him safe and treat his injuries," supported release. *Id.* The court correctly noted, however, that Spurlock's medical care in custody was "not material to whether conditions of release can be fashioned" to mitigate the danger he posed to the community. *Id.* The court therefore denied Spurlock's motion to reopen detention. *Id.* at *5.

### 3. Argument

Sponsler fails to meet his burden to provide new, material information to the court supporting reopening of detention.

### 3.1. Information about IPPC was readily available to Sponsler at the time of the detention hearing.

Sponsler fails to allege that information about IPPC was previously unavailable to him. He simply failed to raise it. Sponsler's failure to present readily available information does not justify reopening detention. *Turino*, 2014 WL 5261292 at *1; *Flores*, 856 F.Supp. at 1406.

Several details are notable here. First, Sponsler knew that his computer use was a significant factor in detention or release. He specifically opposed computer monitoring of any kind in his memorandum, and he intended to use his computer while on home confinement. Doc. 6. That was contrary to Pretrial Services' recommendation that Sponsler not have access to any Internet-capable device.[2] Doc. 7. The government's memorandum included extensive details about Sponsler's computer science background and computer use. Doc. 5. Sponsler was therefore on notice that his computer use was a significant factor for detention.

Second, Sponsler had easy access to information about computer monitoring. Several Pretrial Services officers were present at the detention hearing. And if they could not provide Sponsler with sufficient information about computer monitoring, Sponsler could have exercised his statutory right to a five-day continuance to get the necessary details. *See Flores*, 856 F.Supp. at 1407; *Qiu*, 2022 WL 1082023 at *3. In fact, only three days after the hearing, Sponsler got an email response from Pretrial Services about the

---

[2] Computer monitoring is a routine pretrial release condition in child pornography cases. *See, e.g., United States v. Matthew Schwier*, 3:17-cr-00095-SLG, Doc 176.

U.S. v. Sponsler
3:25-cr-00035-SLG-KFR

availability of IPPC. Doc. 14 at 2. And Sponsler had already solicited the opinions of a "qualified forensic computer expert" in preparation for the June 9 hearing. Doc. 6 at 11.

Therefore, detailed information about IPPC was "readily available" for Sponsler to present at the detention hearing on June 9 or within five days thereafter. *Flores*, 856 F.Supp. at 1407.

### 3.2. Neither IPPC nor Sponsler's conditions of confinement are material to the issue of dangerousness.

Even if the background on IPPC were new information, it has no bearing on whether there are conditions of confinement that can address the danger Sponsler poses to the community, specifically to children depicted in child pornography.

Although Sponsler in his motion states that "[Fishbach] is familiar with the IPPC software," "IPPC software is capable of completely monitoring Dr. Sponsler's use of his devices," "Windows can be configured to lock down all USB ports," and "IPPC can restrict the addition of any software or apps not authorized by the USPO," Fishbach's declaration does not say any of those things. *Compare* Doc. 14 at 2, *with* Doc. 14-2.

Fishbach gives no explanation in his declaration of his familiarity with IPPC, apart from reviewing an email and describing his expertise in other areas of computer forensics. Doc. 14-2 at ¶ 9. He had "no information" about IPPC's ability to block USB ports but asserted that a Windows administrator can do so, assuming that Pretrial Services would be "designated as the system operator on any *authorized* device." *Id.* at ¶ 12 (emphasis added). And he made no assertions whatsoever about IPPC preventing Sponsler from adding software or apps or, for that matter, preventing Sponsler from doing anything on approved

devices. His opinion was limited to IPPC's monitoring capabilities. *Id.* at ¶ 11 (IPPC will "alert" Pretrial Services of Sponsler's device usage and "monitor" his Internet use), ¶ 13 (IPPC can "monitor" Internet-connected devices.). He speculated that IPPC could "disable some activities, on certain devices," without specifying what activities on what devices. *Id.* at ¶ 13.

Second, this Court specifically emphasized that to be enforceable, conditions of release would require Sponsler's compliance. Doc. 14-3 at 6:20. The Court expressed concern about the ease with which Sponsler could obtain and hide child pornography, and those concerns were "amplified" due to Sponsler's computer science background and use of encryption, among other things. *Id.* at 6:6-12. Even taking everything in Fishbach's declaration at face value, it was limited to "authorized" devices that Sponsler was "allowed" to use. Doc. 14-2 at ¶ 11-12. His declaration does not explain how IPPC could prevent Sponsler from using unauthorized devices. Nor does it explain how IPPC would prevent Sponsler from repeating in the exact same criminal behavior that led to his indictment.

Even with IPPC, Pretrial Services could do nothing more than monitor his behavior, and only devices they knew of. As this Court explained, Sponsler was "willing to spend a significant amount of time . . . acquiring, editing, manipulating, and creating his own preferred types of alleged child pornography material." *Id.* at 4:21-23. Sponsler could evade IPPC monitoring with just a fraction of that effort. His proposal fails to address the Court's stated concerns about Sponsler's compliance and technical expertise, or the danger

he poses.

Finally, Sponsler's conditions of confinement are not "material to whether conditions of release can be fashioned." *Spurlock*, 2024 WL 3850395 at *5. As in *Spurlock*, Sponsler alleges that he is receiving inadequate medical care while in custody. *See id.* But this has no bearing on whether any conditions of release can mitigate the danger Sponsler poses to the community.

Because IPPC does not address the Court's stated concerns about Sponsler's compliance, and his medical care is not material to detention, Sponsler's motion fails to establish any facts that have a material bearing on the issue of release or detention.

## 4. Conclusion

The Bail Reform Act does not permit continuous reopening of detention until the party's preferred result is achieved. *Flores*, 856 F. Supp. at 1406. To ensure adequate time to prepare, the Act allows a five-day continuance, or longer for good cause shown. 18 U.S.C. § 3142(f). But once that contesting hearing is held and a decision is made, courts strictly apply the Act's requirement to put forth new, material information before reopening detention. Otherwise, a party could simply reopen detention as many times as needed to reach the preferred outcome. *Flores*, 856 F. Supp. at 1406.

Here, Sponsler put forth a release proposal with little or no computer monitoring, proceeded with a contested detention hearing, and did not get the result he wanted. That does not allow him to now present information about IPPC as if it is new, hoping for a different result.

And even if IPPC could prevent Sponsler from using devices in an unauthorized way, it does not address the critical flaw raised by the government and identified by this Court: it relies wholly on Sponsler's good faith compliance. *See United States v. Hir*, 517 F.3d 1081, 1091-92 (9th Cir. 2008) ("Although these proposed conditions of release are strict, they contain one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance.").

Sponsler has therefore failed to meet his burden under the Bail Reform Act, and his motion should be denied.

Should this Court choose to reopen the issue of detention, the United States respectfully seeks leave to file a supplemental memorandum with additional information supporting Sponsler's continued detention. *See United States v. Terrone*, 454 F. Supp. 3d 1009, 1017 (D. Nev. 2020). ("Generally, once a detention hearing is reopened, it is reopened to allow the court to receive any information, within reason, not submitted at the initial hearing, allowing the new information to be considered in context.").

RESPECTFULLY SUBMITTED June 18, 2025 at Anchorage, Alaska.

    MICHAEL J. HEYMAN
    United States Attorney

    /s Jennifer Ivers
    JENNIFER IVERS
    Assistant United States Attorney
    United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

/s Jennifer Ivers

U.S. v. Sponsler
3:25-cr-00035-SLG-KFR
Page 13 of 13
Case 3:25-cr-00035-SLG-KFR    Document 19    Filed 06/18/25    Page 13 of 13